UNITED STATES COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:24-cv-24068-FAM

MARTIN BORKAN an individual, and
MSB HOSPITALITY, LLC, a
Florida Limited Liability Company

Plaintiffs,

v.

SOMETHING GOOD SUPPER CLUB, LLC, a
Delaware Limited Liability Company,
SOMETHING SHORT, LLC, a Delaware Limited
Liability Company, SANDO SUPPPLIES, LLC, a
New York Limited Liability Company,
ILAN KHUTORSKY, an individual,
RAPHAEL KHUTORSKY, an individual and,
JECKSON LEONARDO, an individual,

Defendants.

---

**DEFENDANTS' MOTION TO STAY THE PROCEEDINGS**

Defendants, Something Good Supper Club, LLC ("Something Good"), Something Short, LLC ("Something Short"), Sando Supplies, LLC ("Sando Supplies"), Ilan Khutorsky ("Ilan K."), Raphael Khutorsky ("Raphael K."), and Jeckson Leonardo ("Leonardo", and collectively "Defendants"), hereby submit this motion to stay the above-captioned matter filed by Plaintiffs, Martin Borkan and MSB Hospitality, LLC (together, "Plaintiffs"), pending a determination in the matter *Martin Borkan and MSB Hospitality v. Something Good Supper Club, Something Short, LLC, Sando Supplies, LLC, Ilan Khutorsky, and Raphael Khutorsky* currently pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2024-019231-CA-01 (the "Florida State Action").

## BACKGROUND FACTS

1. This Action is the fifth lawsuit brought by Plaintiffs against some or all Defendants, three of which are currently pending.

2. On February 12, 2024, Plaintiffs filed a verified complaint in the Southern District of Florida *Borkan, et al v. Something Good Supper Club, LLC, et al,* No. 24-cv-20557-DSL (S.D. Fla.) (the "Second Action") alleging four causes of action against Defendants, purportedly arising from breaches of a settlement agreement (the "Settlement Agreement") between the parties settling an earlier action brought by Plaintiff (the "First Action"). Plaintiff also sought indemnification for an EEOC claim filed on November 9, 2023 (the "EEOC Claim").[1]

3. On July 8, 2024, the Second Action Court, *sua sponte*, issued an order demanding that Plaintiffs make a proffer demonstrating sufficient damages to invoke the First Action Court's diversity jurisdiction over all claims, including Plaintiffs' claim for indemnification. First Action, [D.E. 44].

4. On July 15, 2024, Plaintiffs filed an alleged demonstration of subject matter jurisdiction, which also included a backdoor request for leave to amend the Complaint. First Action, [D.E. 45, 48].

5. On July 18, 2024, Defendants responded to Plaintiffs' purported demonstration of jurisdiction and opposed Plaintiffs' backdoor request to amend.[2] Second Action, [D.E. 46]. On July 23, 2024, the Court struck Plaintiffs' "motion" to amend the complaint in the Second Action. Second Action, [D.E. 50].

---

[1] On May 6, 2024, Kayleigh Hayes filed a lawsuit against, *inter alia*, Plaintiffs and Defendants in the Southern District of New York, captioned *Kayleigh Hayes v. 355 Restaurant Group LLC, Pir Granoff, Matthew Arnold, Ashwin Deshmukh, Something Good Supper Club, LLC, Something Short, LLC, Sando Supplies LLC, Raphael Khutorsky, Ilan Khutorsky, Jeckson Leonardo, MSB Hospitality LLC, and Martin Borkan,* 24-cv-03468-JHR (S.D.N.Y.) (the "New York Litigation"), based on claims related to those in the EEOC Claim.

[2] Plaintiffs sought to add claims that the payments made under the Settlement Agreement were unlawful.

6. On August 21, 2024, the Court dismissed the First Action on the grounds that that Court lacked subject matter jurisdiction (the "Dismissal Order"). First Action, [D.E. 58].

7. On September 11, 2024, Plaintiffs filed a complaint against Something Good, Ilan K., and Raphael K. in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Case No. 2024-017382) (the "Florida State Action"). The Florida State Action sought a declaratory judgment and damages based on Plaintiffs' indemnification claims.

8. On October 10, 2024, Plaintiffs served Something Good with a request for production, seeking 32 categories of documents, and 13 interrogatories in the Florida State Action.[3]

9. On November 27, 2024, defendants in the Florida State Action moved to dismiss for *forum non conveniens.*[4]

10. A month after filing the Florida State Action, on October 7, 2024, Plaintiffs filed a separate complaint seeking a declaratory judgment that the payments made by Defendants under the Settlement Agreement (the "Settlement Payments") and damages related to Defendants' purported breaches of the settlement agreement, including the alleged unlawful Settlement Payments, captioned *Martin Borkan et al v. Something Good Supper Club, LLC et al*, Case No: 2024-019231-CA-01 (the "Second Florida State Action"). Plaintiffs did not mark the Florida State Action and the Second Florida State Action as related and both cases are currently pending before

[3] These wildly overbroad requests were not limited to requests for documents and information related to the indemnification claims raised in the Florida State Action but rather sought documents and information related to *all* of Plaintiffs' pending cases (claims which Plaintiffs deemed to be distinct enough to file three separate actions). Defendants in the Florida State Action sought a protective order limiting those requests and/or staying discovery until the Court's decision on defendant's motion to dismiss for *forum non conveniens.*

[4] The Dismissal Order clearly informed Plaintiffs that Florida was not the proper forum for Plaintiffs' indemnification claims, yet Plaintiffs chose to file in Florida again.

different judges. A true and correct copy of the Second Florida State Action complaint is annexed hereto as **Exhibit A**.

11. Specifically, Plaintiffs sought a declaratory judgment stating that Defendants payments to Plaintiffs under the Settlement Agreement were "unlawful."

12. On October 15 and October 18, 2024, Plaintiffs served eight separate sets of discovery requests on Defendants in the Second Florida State Action. Specifically, each defendant in the Second Florida State Action were served with thirty-eight (38) separate (and wildly overbroad) document requests and thirteen (13) interrogatories.[5]

13. On November 27, 2024, defendants in the Second Florida State Action filed a motion to dismiss (the "Motion to Dismiss"). Plaintiffs have not yet responded to the Motion to Dismiss and the Court has not yet set a hearing date. A true and correct copy of the Motion to Dismiss is annexed hereto as Exhibit B.

14. Not satisfied with having filed two separate cases in Florida State Court, on October 21, 2024, Plaintiffs filed *another* complaint against Defendants in this Action (the "Complaint"). Plaintiffs again seek declaratory judgment stating that Defendants' payments to Plaintiffs under the Settlement Agreement were "unlawful" (the exact same relief sought in the Second Florida State Action). Plaintiffs also sought damages for alleged RICO violations against Defendants, claims which are premised on the Settlement Payments being unlawful.[6]

---

[5] Many of these requests were previously deemed wildly overbroad by Magistrate Judge Jared Strauss before the Second Action was dismissed.

[6] Defendants believe that the filing of this Action in and of itself is frivolous and reserve the right to move for sanctions at a later date if Plaintiffs fail to withdraw this lawsuit in its entirety. While Plaintiffs attempt to style the RICO claims as distinct from the breach of contract claims in the Second Florida State Action, they seek the same damages for the exact same alleged conduct. Plaintiffs have not (and cannot) show that they were damaged (or could be damaged) by receipt of the Settlement Payments, which is necessary for both breach of contract and RICO claims. Further, counsel for Plaintiffs alleged that the Settlement Payments were unlawful prior to directing Defendants to make the final Settlement Payment into his escrow account, which would make him a co-conspirator and/or member of the alleged enterprise (and a willing participant in the alleged predicate acts underlying the RICO claim).

15. Plaintiffs' simultaneous filings of three separate actions, none of which have been marked as related or placed before a single judge, while also seeking droves of discovery (most of which is wholly irrelevant to Plaintiffs' claims), was done for the purpose of harassing Defendants and improper judge-shopping. Plaintiffs claim to have entered into the Settlement Agreement to be done with Defendants for good yet appear unable to stop coming after Defendants for wholly fabricated allegations of wrongdoing. Indeed, Plaintiffs admit they received all that they were owed under the Settlement Agreement yet appear unable to leave Defendants alone and continue to want more from them. Plaintiffs' continuous filings and discovery request serve only to harass Defendants by forcing them to expend significant time and resources defending multiple (frivolous) actions in three parallel proceedings. It is clear that Plaintiffs will not stop abusing the judicial process until they put Defendants out of business entirely. Plaintiffs' obsession with harassing Defendants should not be countenanced by this Court and a stay must be granted.

## ARGUMENT

### A. THIS CASE SHOULD BE STAYED PENDING THE COURT'S DETERMINATION IN THE SECOND FLORIDA STATE ACTION

16. "District courts have the inherent power to stay litigation pending the outcome of a related proceeding in another forum. Orders staying litigation are inherently discretionary[.]" *Innovative Patented Tech., LLC. v. Samsung Elecs. Co.*, No. 07-81148-CIV, 2008 WL 2726914, at *1 (S.D. Fla. July 10, 2008) (staying case pending determination in earlier filed state court case "to avoid inconsistent judicial findings . . . unnecessary litigation costs and to conserve judicial resources"); *see also CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("'[t]he inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding ... is not questioned."); *Barnes v. CS Mktg. LLC*, 430 F.

Supp. 3d 1309, 1311 (S.D. Fla. 2020) ("It is well accepted that '[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.'").

17. The *Colorado River* doctrine is instructive, setting forth a non-exhaustive list of several factors that might warrant a district court's declination to use its jurisdiction when parallel state and federal litigation exists.[7] *See Colorado River Water Conserv. Dist. V. United States,* 424 U.S. 800, 816-18(1976). Those factors include: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, ... (6) the adequacy of the state court to protect the parties' rights[,]" (7) "the vexatious or reactive nature of either the federal or the state litigation," and (8) "whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Gold-Fogel v. Fogel*, 16 F.4th 790, 800 (11th Cir. 2021) (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004)).

18. A court considering whether to stay (or dismiss) federal proceedings pursuant to the *Colorado River* doctrine engages a two-step analysis: (1) a court must satisfy that the federal and state proceedings involve substantially the same parties and substantially the same issues- in other words, are "parallel" and (2) whether the application of any factor or combination of factors supports the conclusion that the case is an exceptional one where "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" warrants a stay or dismissal of the federal litigation in favor of the state litigation, despite the usual

[7] Defendants do not request that the Court decline to exercise jurisdiction over this action, but rather seek a stay pending the proceedings in the Second Florida State Action, or alternatively, until the Court rules on the Motion to Dismiss.

duty to exercise jurisdiction." *Fogel*, 16 F.4th at 801 (citation and internal quotation marks omitted).

19. As to the first step, the federal and state proceedings at issue here are substantially similar. Both seeks declaratory judgment and damages based on the Settlement Payments allegedly being unlawful, claims which are premised on the exact same alleged conduct. The declaratory judgment claims in both cases are identical. Likewise, the other claims in both actions depend on a finding that the Settlement Payments were unlawful, and that Plaintiffs were somehow damaged by those payments.

20. As set forth above, this action and the Second Florida State Action involve the substantially the same parties. All defendants in the Second Florida State Action are named defendants in this Action. The sole Defendant not included in the Second Florida State Action is Leonardo, however, the Complaint makes no substantive allegations against him. Plaintiffs' claims for violations of Federal Civil RICO Statute, is predicated on a finding that the payments made to Plaintiffs under the Settlement Agreement were unlawful (and thus somehow constituted wire fraud or money laundering). Likewise, Plaintiffs breach of contract claims in the Second Florida State Action are premised on the same alleged conduct, namely that the Settlement Payments were unlawful.

21. In seeking declaratory relief, Plaintiffs argue that the payments Defendants made pursuant to the Settlement Agreement were unlawful because those payments "came from an unlawful source (to wit, the result of the conspiratory securities fraud perpetrated on the Company's investors in and around the time of the Settlement Agreement onward)." Complaint at ¶ 127.

22. The predicate acts underlying Plaintiffs' RICO claims are based on the exact same alleged conduct, such that, if the Court finds that they payments were not unlawful (and they were not), then there would be no basis for a claim that those payments constituted wire fraud, money laundering, or any other predicate act. *See* Complaint at ¶¶ 148-159 (alleging that Defendants defrauded investors into investing funds which were then unlawfully used to pay Plaintiffs under the Settlement Agreement).

23. In the Second Florida State Action, Plaintiffs also seek damages for alleged breaches of the Settlement Agreement, including Plaintiffs' claim that the Settlement Payments were unlawful and thus constituted a breach of the Settlement Agreement. *See* Ex. A, at ¶¶ 101-119.

24. Plaintiffs' RICO claims in this Action seek the same damages based on the same exact alleged conduct. *See* Complaint ¶¶ at 148-157. Clearly, the discovery in both cases would be identical, as both concern the exact same underlying alleged conduct. Further, all of the parties in this Action, with the exception of Jeckson Leonardo[8], are parties to the Second Florida State Action.

25. As to the second step, assessing the factors here leads to the conclusion that this case is an exceptional one warranting a stay.

26. Plaintiffs seek to waste the Court's time and resources (along with Defendants' time and resources) by forcing Defendants to engage in identical discovery in this Action and the Second Florida State Action (and in the First Florida Action), as both actions concern ***the exact same alleged conduct***. This in turn also risks having two separate trials concerning on the exact

---

[8] There are no substantive allegations against Leonardo in the Complaint, rather it merely alleged that "as a named Manager of the Company, [he] knew or should have known that the Enterprise was committing securities fraud, but failed to take any meaningful action against the Insiders to prevent or stop the scheme." Complaint, at ¶ 152.

same alleged conduct, and/or having conflicting decisions based on the same evidence. This is unnecessarily duplicative and wasteful and should not be countenanced by this Court. *See, e.g., Sides v. Simmon*, Case No. 07-80347-CIV, 2007 WL 3344405, at *3 (S.D. Fla. Nov. 7, 2007) ("To allow litigation in this Court, while the same litigation is pending in state court, will require twice the resources: two discoveries, two trials and possibly two conflicting decisions based on the same evidence.... This is unnecessary and excessive."); *Leaderstat, LLC v. Abisellan*, 252 F.R.D. 698, 701 (M.D. Fla. 2007) ("Because the plaintiff seeks to force the defendant to defend two identical lawsuits in two different forums at unnecessary inconvenience and expense, a distinct danger of oppressively duplicative, piecemeal litigation exists."). This Action must be stayed pending the Second Florida State Action to conserve judicial resources and ensure that there are no conflicting judicial findings.

27. Further, Plaintiffs clearly filed two separate actions seeking a declaratory judgment and damages in an effort to obtain a windfall *despite not having been damaged by the alleged conduct.* Plaintiffs do not dispute that they received the Settlement Payments, nor do they actually allege that they are (or even could be) liable to any allegedly defrauded investors for receiving those payments.[9] Simply put, even if Plaintiffs were correct about the Settlement Payments (and they are not), Plaintiffs have not actually been damaged by those payments.

28. Finally, Plaintiffs cannot argue that they will be prejudiced in any way by such a stay. Plaintiffs still have *two* pending lawsuits, including the Second Florida State Action which concerns the exact same alleged underlying conduct (and an identical claim for declaratory relief).

[9] Which Plaintiffs did even *after* alleging that the earlier payment were unlawful, suggesting that, to the extent an enterprise exists (and it did not), counsel for Plaintiffs would have joined that enterprise by directing funds he believed to be unlawful wired into his escrow account.

To the extent the Second Florida State Action is not dismissed upon the Motion to Dismiss, discovery and trial will be conducted concerning the same conduct alleged in this Action.

29. Plaintiffs will have the opportunity to conduct discovery on these same claims in the Second Florida State Action and have a Court make a determination as to whether or not the Settlement Payments are unlawful (and whether or not Plaintiffs have been damaged by those payments). There is simply no reason for two Courts to hear identical claims in parallel proceedings. This Court should exercise its discretion to stay this action pending the Second Florida State Action.

**B. ALTERNATIVELY, DEFENDANTS SHOULD BE GRANTED ADDITIONAL TIME TO RESPOND TO THE COMPLAINT**

30. To the extent the Court declines to stay this Action for the entirety of the proceedings in the Second Florida State Action, Defendants request an extension of time to respond to the Complaint such that Defendants' deadline to respond would be 30-days after any decision on the Motion to Dismiss.

31. The Court's decision on the Motion to Dismiss will greatly impact Defendants' response to the Complaint, as the Court is set to decide on whether Plaintiffs are entitled to declaratory judgment that the payments are unlawful and whether or not Plaintiffs have actually been damaged by those payments if they are in fact deemed to be unlawful (and they are not). Indeed, the Court's ruling could provide Defendants with additional grounds to dismiss this Action and/or effectively make this Action moot as the central question would have already been decided.

32. This extension of time is sought in good faith and not for purposes of delay or harassment, and should the Court grant the relief requested herein, Plaintiffs will not be unduly prejudiced.

**BERGER SINGERMAN LLP**
*Local Counsel for Defendants*
201 East Las Olas Blvd., Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872

By: /s/ Nicole Levy Kushner
Nicole Levy Kushner
Florida Bar No. 106995
nkushner@bergersingerman.com
mavin@bergersingerman.com
drt@bergersingerman.com
*Attorneys for Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for Defendants conferred with Plaintiffs' counsel regarding the relief requested in this Motion in a good faith effort to resolve the issues by email (as counsel for Plaintiffs declined Defendants' request for a telephonic meet and confer) but the parties have been unable to resolve the issues.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of January, 2024, I served the foregoing via electronic filing through this Court's CM/ECF system upon Joseph I. Pardo, Esq., attorney for Plaintiffs Martin Borkan and MSB Hospitality, LLC, at joe@pardolawmiami.com.

BERGER SINGERMAN LLP
*Local Counsel for Defendants*
201 East Las Olas Blvd., Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872

By: /s/ *Nicole Levy Kushner*
Nicole Levy Kushner
Florida Bar No. 106995
nkushner@bergersingerman.com
mavin@bergersingerman.com
drt@bergersingerman.com
*Attorneys for Defendants*