# EXHIBIT B

Filing # 211858419 E-Filed 11/27/2024 01:22:02 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL DISTRICT IN AND FOR
MIAMI-DADE FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO: 2024-019231-CA-01

MARTIN BORKAN, an individual, and
MSB HOSPITALITY, LLC,
a Florida Limited Liability Company,

Plaintiffs,

v.

SOMETHING GOOD SUPPER CLUB, LLC,
a Delaware Limited Liability Company,
SOMETHING SHORT, LLC, a Delaware
Limited Liability Company,
SANDO SUPPLIES, LLC, a
New York Limited Liability Company,
ILAN KHUTORSKY, an individual, and
RAPHAEL KHUTORSKY, an individual,

Defendants.
_____________________________________________/

**MOTION TO DISMISS COMPLAINT**

Defendants Something Good Supper Club, LLC ("Something Good"), Something Short, LLC ("Something Short"), Sando Supplies, LLC ("Sando"), Ilan Khutorsky, and Raphael Khutorsky ("Defendants"), by and through undersigned counsel, move to dismiss the complaint of Plaintiffs Martin Borkan and MSB Hospitality, LLC ("Plaintiffs") pursuant to Fla. R. Civ. P. 1.140(b)(6).

**INTRODUCTION**

Plaintiffs' claims arise from purported breaches of a settlement agreement among all the parties to this case except Something Short, LLC (the "Settlement Agreement"). Compl. at 1 and Compl. Ex. "A" at 1. As part of this wave of contumacious litigation, Plaintiffs bring a three-count

complaint (the "Complaint"). The Complaint is one of five lawsuits brought by Plaintiffs against Defendants concerning similar (and sometimes even identical) claims.[1] This Complaint was filed after the United States District Court for the Southern District of Florida dismissed *Borkan v. Something Good Supper Club, LLC*, Case No. 1:24-cv-20557-DSL (S.D. Fla. July 9, 2024) (the "First Action") for lack of subject-matter jurisdiction, specifically for failure to allege the $75,000 damages threshold for diversity jurisdiction; the claims set forth in this action largely overlap the claims set forth in the First Action.[2]

Count I seeks a declaratory judgment that payments that Plaintiffs received under the Settlement Agreement were made with "unlawful funds" procured by "fraud" from third parties. Notably, Plaintiffs seek the exact same relief in another action filed in the United States District Court for the Southern District of Florida (the "RICO Action") weeks after the Complaint was filed. *See Borkan v. Something Good Supper Club LLC*, 24-cv-24068-FAM (Filed 10/21/2024) (seeking "declaratory relief" for "unlawful payments" (i.e., the $200,0000 and federal claims under Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et. seq.*)).

Count II alleges breach of the Settlement Agreement. The alleged breaches are: (a) failure to use "lawful funds" to pay the settlement; and (b) failure to "expeditiously and in good faith" or "use best efforts" to update Something Good's operating agreement, inform tax authorities that plaintiffs are no longer associated with Something Good, remove Borkan's personal information as the responsible party for the EIN of Something Good, remove Borkan from Something Good's

---

[1] Filed concurrently with this motion is a Request for Judicial Notice in which Defendants respectfully request that the Court take judicial notice of the complaints filed in four other actions by Plaintiffs against Defendants, as well as certain documents filed in the First Action (defined herein).

[2] Plaintiffs did not even attempt to argue that the alleged breaches of the Settlement Agreement resulted in any damages, rather Plaintiffs sought to meet the threshold by arguing that Plaintiffs would expend over $75,000 in legal fees in litigation concerning the purported breaches (despite the fact that no such litigation was or is actually necessary). *See* First Action, D.E. 45.

New York State Liquor Authority Application and remove plaintiffs from all Something Good vendor accounts. Compl. ¶ 118. Plaintiffs do ***not*** allege that these actions were not taken; rather Plaintiffs merely allege that they were not taken with sufficient dispatch. Nor do Plaintiffs allege that they actually suffered *any* damage as a result of the purported delay.

Plaintiffs do not expressly seek damages in Count II. Rather, Plaintiffs "request that the Court enter judgment in their favor against each of the Defendants and entering an order compelling Defendants to specifically perform under the Settlement Agreement in a manner consistent with the relief sought herein, awarding Plaintiffs their attorneys' fees and costs, and for all such further relief that this Court deems just and equitable." Compl. at 18.

Count III seeks specific performance of the Settlement Agreement. Count III alleges that Defendants have "failed/or refused to perform the Release Obligation, Further Assurances Obligation, or Good Faith/Best Efforts Obligation." Compl. ¶ 128. It further alleges, in conclusory fashion, that "Defendants' performance is unique, and no adequate remedy at law exists to compel the Defendants to fully perform the foregoing obligations under the Settlement Agreement." *See* Compl. ¶ 129. Yet, Plaintiffs do not actually allege that any performance under the Settlement Agreement is still required, Plaintiffs merely complain that performance was not done as quickly as Plaintiffs wanted. It is, of course, axiomatic that no claim for specific performance can lie where the action a plaintiff seeks to mandate has already been taken by the defendant. *See, e.g., Boardwalk at Daytona Dev., LLC v. Paspalakis*, 220 So. 3d 457, 461 (Fla. 5th DCA2016) (specific performance requires showing that plaintiff is "clearly entitled" to that performance).

This is the second lawsuit in which Plaintiffs have brought these same claims alleging breach of the Settlement Agreement. In the First Action, these same Plaintiffs sued all the same Defendants (except Something Short) for, *inter alia*, specific performance of the Settlement

Agreement, breach of the Settlement Agreement, and breach of the implied covenant of good faith and fair dealing. The First Action Court, *sua sponte*, dismissed Plaintiffs' claims for lack of subject matter jurisdiction due to failure to state damages sufficient to invoke the $75,000 threshold for diversity actions. *See* First Action D.E. 58 at 3. Plaintiffs did not even attempt to argue that the alleged breached of the Settlement Agreement resulted in any damages, rather Plaintiffs sought to meet the threshold by arguing that Plaintiffs would expend over $75,000 in legal fees in litigation concerning the purported breaches (despite the fact that no such litigation was or is actually necessary).

The same fatal weakness that plagued by the First Action plagues the current one: Plaintiffs cannot state any damages for the purported breaches of the Settlement Agreement by Defendants and attempt to use legal fees allegedly run up in the course of their vexatious litigation strategy as a substitute. That simply does not suffice as a matter of law, and like the United States District Court which considered all of Plaintiffs' claims in in the First Action, this Court should dismiss the Complaint. It should also dismiss Something Short from this case because (a) it was not a party to the Settlement Agreement underpinning all causes of action in the Complaint, and (b) this Court lacks personal jurisdiction over Something Short.

## ARGUMENT

### I. THE COURT SHOULD DISMISS COUNT I SEEKING A DECLARATORY JUDGMENT

"[Florida's Declaratory Judgments Act] should not be invoked to foster frivolous or useless litigation, to answer abstract questions, to satisfy idle curiosity, to authorize a fishing expedition or to promulgate judgments serving no useful purpose." *See Overman v. State Bd. of Control*, 62 So. 2d 696, 698 (Fla. 1953). Plaintiffs, however, have managed a Yahtzee of Shame by squeezing all five of the foregoing improper bases into the Complaint. As a preliminary matter, Plaintiffs

have not alleged (nor can they) that the Buy Out Payments were untimely made: the first Buy Out Payment was timely made by September 23, 2023, the second Buy Out Payment was timely made by October 23, 2023, and the final Buy Out Payment was timely made by October 23, 2024. Plaintiffs received and have retained each such Buy Out Payment. Instead, *while keeping and having use of the allegedly ill-gotten funds*, Plaintiffs seek to deprive Defendants of the benefit of their bargain in the Settlement Agreement—namely, the peace and finality that should have come from those timely-made Buy Out Payments. This Court ought not to sustain Plaintiffs' bad-faith attempts to have their cake and eat it too.

> In order to sustain a claim for declaratory judgment, a plaintiff must allege:
>
> (1) there is a bona fide, actual, present practical need for the declaration;
>
> (2) the declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts;
>
> (3) some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts;
>
> (4) there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law;
>
> (5) the antagonistic and adverse interests are all before the court by proper process or class representation;
>
> (6) relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.

*See Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles*, 680 So. 2d 400, 404 (Fla. 1996).[3]

[3] The right to seek a declaratory judgment is established by Florida law, specifically, Fla. Stat. § 86.021. That statute, often referred to as the Declaratory Judgment Act provides: "Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Fla. Stat. § 86.021.

In the case at bar, Plaintiff's allegations fail to satisfy elements "1" "5" and "6" of a declaratory judgment claim. Additionally, Plaintiffs' declaratory judgment claims are impermissibly duplicative of their other claims in this case, impermissibly seek to have the court adjudge ultimate liability in the case, are premised upon on conclusory "fraud" allegations, and seek to promulgate impermissible useless litigation. Accordingly, Count I must be dismissed.

### A. Plaintiffs Have Not Shown There is A Bona Fide, Actual, Present Practical Need for the Declaration.

Plaintiffs' declaratory judgment claim, in substance, asserts that Defendants paid Plaintiffs $200,000 in funds obtained from third parties (which the Settlement Agreement expressly contemplates) whom Defendants allegedly "defrauded", and that, *theoretically*, such investors could seek disgorgement of those funds from Plaintiff. Compl. ¶¶ 82, 95-97. Specifically, "upon information and belief" Plaintiffs allege "each of the investors in the Company was solicited on false pretenses" to "pay the Buy Out Payments to Plaintiffs under the Settlement Agreement and not to operate the Company." *Id*. at ¶¶ 95-96.

Plaintiffs go on to allege that the "Buy Out Payments made to Plaintiffs to date came from an unlawful source[4] (to wit, the result of conspiratorial securities fraud perpetrated on the Company's investors)." *Id.* ¶ 104. Plaintiffs allege that "Plaintiffs [have] been adversely affected because the status of such Buy out Payments has been called into question, thereby exposing Plaintiffs to potential claims of disgorgement due to the Defendants' illegal conduct." *Id.* ¶ 105. This is utter nonsense.

---

[4] To be clear, the Settlement Agreement is clear that the Buyout set forth therein can be paid from "any lawful source", specifically including "funds that are provided by third parties, through loans, or otherwise." *See* Compl. Ex. A, (Settlement Agreement, § 2.)

Plaintiffs fail to allege that any investor has sought, or even threatened to seek, disgorgement of any funds as against Plaintiffs. Unless and until one does, there is no "bona fide, actual, present practical need for the declaration" that the $200,000 came from an "unlawful source."[5] That is because "Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, and rest in the future." *Girard v. Am. Sec. Ins. Co.*, Case No. 16-cv-61335-BLOOM/Valle, 4 (S.D. Fla. Aug. 12, 2016) (citation omitted)).

For example, in *LaBella v. Food Fair, Inc.*, 406 So. 2d 1216 (Fla. 3d DCA1981) the Court of Appeal affirmed dismissal of a declaratory judgment complaint seeking a declaration that a statute, limiting payments for deaths arising from a workplace injury to those deaths that occur within five years of the accident, was unconstitutional. *Id.* The action was brought by relatives of an injured worker who was still alive. *Id.* In affirming the dismissal, the *LaBella* Court held that "[the injured worker] has not yet died. There is therefore no way of knowing either (a) whether any of the plaintiffs will survive him or, (b) even more obviously, whether his death will be the result of the 1973 accident. Both of these contingencies must occur for any death benefits to be recovered even if the appellants' position on the constitutional question were upheld." *Id.* at 1217.

Here, an "advisory opinion" is precisely what Plaintiffs seek. They allege that a third-party investor *might* sue some or all of the Defendants with respect to the investment in question, and *if* successful in that suit, *might* seek disgorgement as against Plaintiffs on the basis that Plaintiffs are recipients of wrongfully-obtained funds, which funds Plaintiffs *might* have to disgorge on the argument that Plaintiffs were only entitled to Buy Out Payments arising from "lawful" funds. This

[5] Nor is it clear that any alleged defrauded investor *could* seek disgorgement from Plaintiffs. Plaintiffs state no legal theory that would allow for disgorgement under the circumstances pled in the Complaint.

kind of fourth-order speculation about future events is the *sine qua non* of hypothetical exercise in which Florida Courts expressly decline to issue declaratory judgments. The declaratory judgment claim must be dismissed accordingly.

### B. Plaintiffs Have Not Shown that the Antagonistic and Adverse Interests are All Before the Court by Proper Process or Class Representation

Plaintiffs have failed to show that "the antagonistic and adverse interests are all before the court by proper process or class representation." *Chiles*, 680 So. 2d at 404. Specifically, Plaintiffs seek a ruling that certain unnamed investors were defrauded and that they may, hypothetically, sue them to recover $200,000 in settlement payments to them. As such, those investors are "antagonistic and adverse" to Plaintiffs. A ruling that the investors were defrauded could have huge consequences for those investors, including rescission of their purchases of securities, civil claims against the investors for being negligent with money that may have been entrusted to them by others or by their employers, etc. Moreover, a declaration that they have or do not have certain rights because they may or may not have been defrauded quite obviously requires their participation in this case. It is the very reason for this element of a declaratory judgment action and their absence requires dismissal of the declaratory judgment claim.

The Second District Court of Appeal applied this principle in *Miller v. Miller*, 151 So. 2d 869, 871 (Fla. 2d DCA1963). In that case, a widow brought a declaratory judgment action seeking to have a prenuptial agreement declared void. One feature of the prenuptial agreement "provided that each of the parties may encumber, sell, dispose or give any and all of their property without the consent of the other." *Id.* In affirming the trial court's dismissal of the complaint, the *Miller* Court explained that "[i]n the event any such property had been so conveyed, then those claiming title to such property would be necessary parties. A complaint for a declaratory decree should clearly allege facts setting out who the persons are who have or reasonably may have an actual,

present, adverse and antagonistic interest in the subject matter, either in fact or law; and all of such persons should be before the court by proper process in order that it should affirmatively appear that 'the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.'" *Id.* (quoting *May v. Holley*, 59 So.2d 636, 639 (Fla. 1952)).

In the case at bar, as in *Miller*, the Court should dismiss the declaratory judgment claim for failure to fulfill element "5" of a declaratory judgment claim.

**C. Plaintiffs Have Failed To Show That The Relief Sought Is Not Merely Giving Of Legal Advice By The Courts.**

The sixth element of a declaratory judgment action is that the relief sought is not merely giving of legal advice by the courts of the answer to questions propounded from curiosity. Plaintiffs' declaratory judgment count fails to satisfy this element as well for the reasons set forth above.

Without the "investors" being before the court in this case, Plaintiffs, in substance, are seeking to have the court give an opinion on whether, in a hypothetical lawsuit by those investors against Defendants, the investors could prove that Defendants defrauded them and, in turn, win a hypothetical lawsuit against Plaintiffs to disgorge the $200,000.00. This is an impermissible request for "legal advice." *See Miller*, 151 So. 2d at 871 (request for declaration that deceased husband could not alienate property without wife's consent was impermissible request for legal advice where transferees of such property were absent from the case).

**D. Plaintiffs Improperly Seek Adjudication of Ultimate Liability.**

The declaratory judgment count should also be dismissed because Plaintiffs improperly seek to have the court adjudge ultimate liability, which is *anathema* to declaratory judgment claims. Instead, the question of the parties' rights with respect to the Buy Out Payments is predicated upon the outcome of Plaintiff's breach of contract claim arising from the same set of facts and circumstances; namely, *if true* that the Buy Out Payments did not originate from "any lawful source"

(per the language of the Settlement Agreement), *then and only then* would the question arise as to what rights the parties have to the $450,000 dollars in Buy Out Payments Defendants have already made to Plaintiffs (and which Plaintiffs retain to this day). *See Crawley-Kitzman v. Hernandez*, 324 So. 3d 968, 975 (Fla 3d DCA2021) ("[T]he allegations are not suitable for declaratory judgment because the Appellant seeks to have the court adjudge ultimate facts and liability, rather than to provide a declaration of rights to proceed. Counts I and II are more appropriately brought as counts for breach of contract and Appellant's remedies are those that are to be sought at law. Because the Appellant's counts I and II do not seek a declaration of rights as between the parties but rather a final judgment of liability in Appellant's favor, the trial court correctly dismissed these counts.")

Under the reasoning of *Crawley-Kitzman*, the declaratory judgment claim in the case at bar should be dismissed. As in that case, Plaintiffs seek to have the Court determine that Defendants committed fraud (against the non-party "investors") and, in substance, pay Plaintiffs the $200,000 again. This is fatal to Plaintiffs' claim for declaratory judgment.

### E. The Declaratory Judgment Claim is Duplicative of the Breach of Contract Claim.

"[A]a trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *McIntosh v. Harbour Club Villas*, 468 So. 2d 1075, 1081 (Fla.3d DCA. 1985) (citing *Kies v. Florida Ins. Guaranty Ass'n*, 435 So.2d 410, 411 (Fla. 5th DCA 1983) (holding that "[t]he trial court should not have entertained a separate action for declaratory judgment on an issue properly raised in the pleadings in the main action, and already before the court").

In the case at bar, Plaintiffs have brought a separate count for "breach of contract" based on the same allegations that Plaintiffs did not pay Defendants with "lawful" funds. Accordingly, Count I should be dismissed.

### F. Plaintiffs Improperly Invoke the Declaratory Judgment Act to Foster Frivolous and Useless Litigation.

As noted above, it is well-settled that the declaratory judgment procedure "should not be invoked to foster frivolous or useless litigation." *Overman*, 62 So. 2d at 698. That is what Plaintiffs are doing in this count of the Complaint. Quite obviously, if Plaintiffs were really interested in a declaration that the "investors" cannot recoup the $200,000 from them, they would sue *the investors* for a declaratory judgment to that effect; with respect to the relative interests of Plaintiffs *and Defendants* in the Buy Out Payments, there is no dispute—Defendants paid the Buy Out Payments pursuant to the Settlement Agreement *and Plaintiffs accepted them*. But harassment, not a good faith effort to obtain a declaration is what motivates this claim; so Plaintiffs chose the unreasonable course. It must be dismissed.

## II. COUNT II OF THE COMPLAINT, ALLEGING BREACH OF CONTRACT, MUST BE DISMISSED.

Plaintiff's claim for breach of the Settlement Agreement, in Count II of the Complaint, must be dismissed because: (a) Plaintiffs fail to allege or even seek damages; (b) Plaintiffs cannot salvage their claim by seeking specific performance (the sole remedy they seek on Count II) because Plaintiffs fail to allege that any acts remain outstanding and thus subject to specific performance; (c) even if Plaintiffs had a basis for specific performance (and they do not), specific performance is not appropriate as Plaintiffs have a legal remedy; and (d) Plaintiffs' breach of contract claim, insofar as it is based upon failure to pay the $200,000 in "lawful funds," arises

from conclusory fraud allegations which cannot be sustained; and (e) Plaintiffs' claim that they were not paid in "lawful funds" misinterprets the Settlement Agreement.

Rule 1.140(b)(6) authorizes a motion to dismiss for failure to state a cause of action. "Whether a complaint is sufficient to state a cause of action is an issue of law." *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999). "To state a cause of action, a complaint must allege **sufficient ultimate facts** to show that a pleader is entitled to relief." *Id.* (emphasis added); Fla. R. Civ. P. 1.110(b) (requiring "…a short and plain statement of the ultimate facts showing that a pleader is entitled to relief."). "Unlike the pleading requirements in the federal courts where notice pleading is the prevailing standard, the Florida Rules of Civil Procedure require fact pleading." *Ranger Constr. Indus., Inc. v. Martin Cos. of Daytona, Inc.*, 881 So. 2d 677, 680 (Fla. 5th DCA2004); *Louie's Oyster, Inc. v. Villagio Di Las Olas, Inc.*, 915 So. 2d 220, 221-222 (Fla. 4th DCA 2005). Essential allegations will not be imported by inference into a complaint to survive a motion to dismiss. *See Harwood v. Bush*, 223 So. 2d 359, 360 (Fla. 4th DCA1969). The Complaint fails to meet these requirements and must be dismissed.

**A. Plaintiffs Fail to Allege Damages.**

To assert a claim for breach of contract, the plaintiff must adequately plead: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008); *see Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1300 (M.D. Fla. 2009) ("Under Florida law, damages are an essential element of an action for breach of contract."); *see also Tri-State Energy Solutions, LLP v. KVAR Energy Savings Inc.*, 884 F. Supp. 2d 168, 180 (D. Del. 2012) (applying Florida law to grant summary judgment on breach of NDA on the grounds that party asserting breach of contract failed to demonstrate damages)

The recent case *People's Trust. Insurance Co. v. Alonzo-Pombo*, 307 So. 3d 840, 842-43 (Fla. 3d DCA 2020) is instructive on this point. There, Peoples' Trust Insurance Company ("PTI") sued a homeowner who had made a claim for failure to sign and return a proof of loss statement. *Id.* at 842. The trial court dismissed the complaint for failure to state a cause of action due to PTI's failure to allege damages. The Court of Appeal affirmed dismissal on the grounds that "[t]he complaint fails to state a cause of action for breach of contract, because [plaintiff] fails to identify any actual damages as a result of the alleged breach." *Id.* at 842-43. The court so held even though "PTI state[d] that it suffered 'material prejudice' as a result of the Homeowner's failure to provide a sworn proof of loss" because that material prejudice "is not measurable damages." *Id.* at 843. ("As PTI has not alleged it has or will suffer any damages, the breach of contract count cannot be sustained. We affirm the trial court's dismissal of the breach of contract count.")

Plaintiffs do not actually claim that Defendants failed to perform their obligations, only that they did not do so as quickly as Plaintiffs believe these obligations should have been performed. Plaintiffs further fail to allege that they suffered any damages whatsoever as a result of those alleged delays. For example, Plaintiffs allege that the SLA sent Something Short a "deficiency letter" on December 1, 2023: what Plaintiffs conveniently omit is that the so-called deficiency letters expressly noted that the SLA "was notified that Martin Borkan is no longer an LLC Member of the corporate applicant. Provide a resignation letter for Martin Borkan." A copy of the deficiency letter is attached as **Exhibit 1** [6]; *c.f.* Compl. ¶ 53. Clearly, the Defendants sought to have Plaintiffs removed from the SLA Application but needed assistance *from Plaintiffs* to

[6] The Court can properly consider the contents of this letter in a motion to dismiss because Plaintiffs specifically incorporate it by reference. Compl. ¶ 53; *see also One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015) ("where the terms of a legal document are impliedly incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss."), citing *Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So.3d 1246, 1249 (Fla. 2d DCA 2011)

complete the process (a fact which Plaintiffs conveniently omit from the Complaint); this cannot serve as the *gravamen* for a breach of contract claim (nor, obviously, for specific performance). This alleged breach cannot sustain Count II of the Complaint because, even if Defendants' actions were insufficiently prompt under the terms of the Settlement Agreement (they were not), Plaintiffs do not and cannot actually allege that Borkan suffered any damage as a result of that alleged failure or delay. Plaintiffs' conclusory allegation that "[s]o long as Borkan was associated with the SLA Application, Borkan was exposed to liability" (Compl. ¶ 40) fails as a matter of law: the Complaint fails to identify *any* negative impact upon Borkan as a result of this purported exposure. Plaintiffs' allegations as to the New York State taxing authority and other vendors, such as Toast, are equally unavailing: they do not allege that the removal did not occur (it did, and Plaintiffs have written proof of same), nor that Plaintiffs suffered any damages as a result of any delay in such removals. Plaintiffs have not alleged (and cannot) allege that they suffered any damages as a result of these purported delays, which is an especially glaring failure given that it was the subject of specific briefing in the First Action, where the failure of damages resulted in dismissal of the First Action for failure to demonstrate the $75,000 damages trigger for diversity actions.[7] As Plaintiffs have failed to allege any damages arising from the purported breaches of the Settlement Agreement, Count II must be dismissed.

**B. Plaintiffs Cannot Salvage Their Breach of Contract Claim by Seeking Specific Performance.**

Plaintiffs cannot sustain Count II by seeking specific performance of the Settlement Agreement because Plaintiffs have a remedy at law: "[u]nder Florida law, the equitable remedy of specific performance is granted only where . . . '(1) the plaintiff is clearly entitled to [specific

[7] Plaintiffs argued that they would suffer more than $75,000 in damages in the amount of attorneys' fees in litigating the First Action, which the District Court soundly rejected (and which Florida law does not countenance using as the basis for contract damages). *See* First Action, D.E. 58.

performance], (2) there is no adequate remedy at law, and (3) the judge believes that justice requires it." *Ohio Sec. Ins. Co. v. E Kelly Enterprises, Inc.*, No. 22-cv-24754-TKW-HTC, 2023 WL 9234501, at *2 (N.D. Fla. Dec. 26, 2023) (emphasis in original) (quoting *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005)). "The requirement that the plaintiff have no adequate remedy at law before specific performance can be granted is rooted in the fact that '[s]pecific performance is, by its nature, only an alternative to money damages in enforcing the terms of a contract.'" *Ohio Sec. Ins. Co.*, 2023 WL 9234501, at *2 (quoting *Kruse v. Massachusetts Mut. Life Ins. Co.*, 2017 WL 3494334, at *8 (S.D. Fla. Aug. 15, 2017)).

Here the contract at issue provides an adequate remedy at law because, if Plaintiffs actually suffer damages as a result of a breach of any provision, they may recover such damages from the Defendants. Accordingly, Count II of the Complaint must be dismissed. *See Ohio Sec. Ins. Co.*, 2023 WL 9234501, at *2 (dismissing claim for specific performance of indemnification contract where plaintiff could recover damages if indemnification not provided); *Kruse*, 2017 WL 3494334, at *8 (dismissing claim for specific performance with prejudice and explaining that the specific performance claim was "redundant" and "duplicative" of the plaintiff's breach of contract claim because "payment of the Policy's death benefit is the very same remedy Plaintiff seeks" in the breach of contract claim).

**C. Plaintiffs Fail to Plead Fraud With Particularity.**

The crux of Plaintiffs' claims concerning the $200,000 payment is that the funds were obtained through "fraud." Compl. ¶¶ 94-97. Plaintiffs' fraud allegations are conclusory and set forth "upon information and belief." Florida law does not permit fraud claims to survive on such flimsy footing.

Florida Rule of Civil Procedure 1.120(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with such particularity as the circumstances may permit." Far from being mere aspiration, Florida Courts routinely enforce the requirement of specificity, as "[f]ailure to allege a specific element of fraud in a complaint is fatal when challenged by a motion to dismiss." *See, e.g., Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. Dev. Corp.*, 450 So. 2d 1231 (Fla. 4th DCA 1984). Accordingly, the claim that the Buy Out Payments arose from fraudulently-obtained funds fails and must be dismissed.

As set forth in the Complaint, the factual allegations underpinning the fraud claim are that:

> 94. Not coincidentally, the Solicited Investments amount to a little over the amount of the Buy Out Payments due to Plaintiffs under the Settlement Agreement.
>
> 95. Upon information and belief, each of the investors in the Company was solicited on false pretenses.
>
> 96. The true purpose of their investment was to pay the Buy Out Payments to Plaintiffs under the Settlement Agreement and not to operate the Company.
>
> 97. Upon information and belief, some of or all of the Defendants have misappropriated and taken the Solicited Investments for their own benefit to the detriment of their investors.

*See* Compl. ¶¶ 94-97 (emphasis added).

Plaintiffs have alleged no specific facts indicating that any investor was subjected to fraud. Plaintiffs fail to allege when the fraudulent statements were made, the contents thereof, by whom and to whom the allegedly fraudulent statements were made, whether the investors reasonably relied upon the supposedly fraudulent statements, or even if the statements were oral or in writing. Each of these pleading failures is fatal to a claim sounding in fraud under Florida law, and must be dismissed. *See e.g., Nat'l Ventures, Inc. v. Water Glades 300 Condo. Ass'n,* 847 So. 2d 1070,

1074 (Fla. 4th DCA 2003) (the elements of fraud must be plead with particularity to survive dismissal).

## III. THE COURT SHOULD DISMISS COUNT III OF PLAINTIFFS' COMPLAINT SEEKING SPECIFIC PERFORMANCE

In Count III of their Complaint, the sole remedy Plaintiffs seek is specific performance. For the reasons set forth immediately above, Plaintiffs cannot sustain a claim for breach of the settlement agreement because they have a remedy at law. Further, Plaintiffs do not actually allege what, if anything, remains to be performed under the Settlement Agreement that a Court could order Defendants to perform. Plaintiffs allege that as of January 2024, they were still receiving notices from certain vendors, suppliers, and/or taxing authorities suggesting they had not been removed as a "responsible party." Compl. ¶ 34. Plaintiffs do not allege that they are still receiving such notices, or that they have any evidence to suggest they have not since been removed. Indeed, the sole "obligation" under the Settlement Agreement that Plaintiffs suggest (but do not actually allege) was not fully complied was Borkan's removal with the New York State taxing authorities. *See* Compl. ¶ 80. Significantly, however, Plaintiffs do not allege that Defendants did not "file the requisite forms with the New York State taxing authorities to remove Borkan," only that they did not do so "*immediately*." Compl. ¶ 78 (emphasis added). Again, it is clear that Defendants actually complied with the Settlement Agreement (even if not as quickly as Plaintiffs wanted) and thus, there is no performance left to be ordered. Accordingly, Count III of the Complaint must be dismissed.

## IV. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST SOMETHING SHORT

Something Short was not a party to the Settlement Agreement, thus it owes no contractual duties to Plaintiffs under the Settlement Agreement. While the Complaint contains many

averments about the "Defendants" taking various actions, the Complaint contains no specific allegations that Something Short was party to the Settlement Agreement or that Something Short performed any acts or committed any omissions.

Further, Plaintiffs explicitly allege that Something Short is a Delaware LLC, with a principal place of business in New York. Compl. ¶ 4. Plaintiffs do not allege that this Court has personal jurisdiction over Something Short or that venue is proper with respect to any claims against Something Short. While "most of the Defendants have waived a challenge to jurisdiction" in the Settlement Agreement (Compl. ¶ 12), Something Short could not have made any such waiver as it was not a party to the Settlement Agreement. Plaintiffs do not allege that Something Short breached a contract with Plaintiffs or that Something Short "committed tortious acts . . . within the District" or that Something Short had sufficient minimum contacts. In fact, Something Short does not have sufficient minimum contacts with Florida to exercise personal jurisdiction over it.[8] As a result, the Complaint as against Something Short must be dismissed.

**WHEREFORE**, Defendants respectfully request that the Court enter an Order dismissing the Complaint in its entirety, grant Defendants their costs and reasonable attorneys' fees as prevailing parties under the settlement agreement and grant such other and further relief as the Court deems just and proper.

Dated: November 27, 2024

Respectfully submitted,

**ELLENOFF GROSSMAN & SCHOLE, LLP**
*Counsel for Defendants - PHV Pending*
1345 Avenue of the Americas, 11th Fl.,
New York, NY 10105
Telephone: (212) 370 1300
Facsimile: (212) 370 7889

By: /s/ *John B. Horgan Esq.*

[8] *See* Affirmation of Ilan Khutorsky, dated November 27, 2024.

John B. Horgan, Esq.
jhorgan@egsllp.com

**BERGER SINGERMAN LLP**
*Local Counsel for Defendants*
201 East Las Olas Blvd., Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2872

By: /s/ *Nicole Levy Kushner*
Nicole Levy Kushner
Florida Bar No. 106995
nkushner@bergersingerman.com
mavin@bergersingerman.com
drt@bergersingerman.com

*Attorneys for Defendants Something Good Supper Club, LLC, Something Short, LLC, Sando Supplies, LLC, Ilan Khutorsky, and Raphael Khutorsky*

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that on this 27th day of November, 2024, a true and correct copy of the foregoing was served via email or filed electronically through the Florida Court's E-Filing Portal, which will, in turn, send a notice of electronic filing to: Joseph I. Pardo, Esq. PARDO LAW PLLC, joe@pardolawmiami.com, melissa@pardolawmiami.com, 1205 Lincoln Road, Suite 211, Miami Beach, FL 33139.

# EXHIBIT 1

NEW YORK STATE OF OPPORTUNITY. | State Liquor Authority

**KATHY HOCHUL**
Governor

**LILY M. FAN**
Chair

**EDGAR DE LEON**
Commissioner

**DEFICIENCY LETTER**

**Date:** December 1, 2023 **Response Due Date:** December 22, 2023

Something Short LLC
Dba: Short Stories
355 Bowery
New York, NY 10003

**Serial No.:** New York OP 1359086 NA-0340-23-111606

Based on a review of your application, the following deficiencies have been identified and can be found below. You must provide a response, to correct **ALL DEFICIENCIES**, within **fifteen (15) business days** from the date of this notice. Failure to do so is grounds for **disapproval** of the application and any associated Temporary Retail Permits. Please address the following:

1. The agency was notified that Martin Borkan is no longer an LLC Member of the corporate applicant. Provide a resignation letter for Martin Borkan.

2. Amend pg. 5 of the license application removing Martin Borkan and provide the partnership percentages between Raphael Khutorsky and Ilan Khutorsky.

3. Provide detailed color photos of the kitchen.

4. Newspapers Affidavits and Proof of Publication: Per Advisory #2022-4, dated 6/22/2022: Proof of publication (newspaper ad) is no longer considered a condition of approval and must be submitted as a deficiency item. Please refer to the advisory for guidance so you can comply by the deficiency response due date. Note: Proof of publication signed by the newspaper publisher will remain a condition of approval (not the publication itself).

***In addition to any deficiency that needs to be resolved, below are items the applicant is required to submit to the Authority. If any of these items are currently available, please submit them with the deficiencies identified above. If items are not currently available, the applicant must submit them prior to a license being issued. The following items will be listed as Conditions of Approval:***

NYS Corporate Filing Receipt
Business phone number (cannot be the same as the principal)

Please send an e-mail response, with the applicant serial number in the subject line to:

zone1.dedicated.deficiencies@sla.ny.gov

Sending items separately may cause a delay in the review process. Additionally, failing to comply with this notice, by the response due date, may prevent a reconsideration request from being granted.

Cc: Michael Kelly